**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— |

THOMAS BROWN on behalf of | **Civil Case No.:** 1:17-cv-07158
himself and all others similarly situated, |
 |
               Plaintiff, | **COMPLAINT AND**
 | **DEMAND FOR**
    v. | **JURY TRIAL**
 |
MICHAEL STAPLETON ASSOCIATES, LTD., |
d/b/a MSA SECURITY, and MICHAEL |
O'NEILL, |
             Defendants. |
———————————————————— |

## <u>INTRODUCTION</u>

1.    This is an action to recover damages and for injunctive relief, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., New York Labor Law ("NYLL") Article 6, and Article 9, and 12 New York Codes, Rules and Regulations ("NYCRR") subpart 142-2.2 as to unpaid overtime wages owed to Plaintiff and all similarly situated persons who are presently or were formerly employed as Explosive Detection Canine Handlers ("Handlers") by Defendant Michael Stapleton Associates, Ltd. doing business as MSA Security ("MSA") and Defendant Michael O'Neill ("O'Neill") and/or any other entities affiliated with or controlled by Defendants.

2.    The FLSA defines the term "employ" to mean "suffer or permit to work." Employees must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer or his business." *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944), 29 CFR 785.7. The training and "care" of an Explosive

Detection Canine ("EDC") at home by a Handler is considered a part of the Handler's principal activities and not preliminary or postliminary activities within the meaning of § 4 of the Portal-to-Portal Act of 1947, 29 U.S.C. 251 et seq.  See *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274 (E.D. Va. 1992); *Nichols v. City of Chicago*, 789 F.Supp. 1438 (N.D. Ill. 1992). The term "care" means bathing, brushing, exercising, feeding, grooming, related cleaning of the EDC's kennel or transport vehicle, and similar activities performed by the Handler at home on workdays as well as on days off duty or during vacation periods. *Opinion Letter Fair Labor Standards Act (FLSA)*, 1993 WL 901171.  Such work is compensable under the FLSA.  Care also includes time spent in administering drugs or medicine for illness and/or transporting the EDC to and from an animal hospital or veterinarian. *Id*.  Likewise, time spent in training the dog at home is compensable.  *Id*.  All of the foregoing activities are illustrative but not all inclusive.

## PARTIES

3.     Plaintiff, THOMAS BROWN ("Brown"), is a citizen of the State of New Jersey, residing at 239 Knox Way, Hopatcong, NJ 07843. Brown is a current employee of MSA, serving as an EDC Handler from April 2014 to present day. Prior to being employed by MSA, Brown served in the United States Marine Corps.

4.     Defendant MSA is a Delaware corporation registered in the State of New York with a principal place of business at 9 Murray Street, New York, NY 10007.

5.     Defendant O'Neill is the Chief Executive Officer of MSA.  O'Neill exercises substantial control over the operations of MSA, authorizes and implements the procedures and policies of MSA and, through the officers, directors and supervisors under his direct control and supervision, has final authority and control over the hiring and firing of all of the employees of MSA.  O'Neill's business address is 9 Murray Street, New York, NY 10007.  Defendant O'Neill is a citizen and resident of the State of New York.

## JURISDICTION AND VENUE

6.      Subject matter jurisdiction exists with respect to this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C.§§ 1331-1332.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims brought under the provisions of the NYLL and the NYCRR.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to the claims herein occurred within this district, and pursuant to 18 U.S.C. § 1965 in that Defendants' principal places of business are within this district and Defendants transact their affairs within this district.

8.      Personal jurisdiction exists pursuant to FRCP 4, CPLR §§ 301 and 302 because Defendants' principal places of business are within New York, and the claims hereunder arise out of Defendants' transaction of business and employment of Plaintiff and similarly situated Handlers are in New York.

## FACTUAL BACKGROUND

9.      MSA provides comprehensive security services and employs over 1,000 employees nationwide.  MSA, *Who is MSA*, http://www.msasecurity.net/who-is-msa (last visited Aug. 29, 2017).

10.      MSA specializes in training bomb sniffing dogs and providing Explosive Detection Canine services.

11.      MSA has numerous government contracts and is an enterprise actively engaged in interstate and international commerce providing Explosive Detection Canine services to clients throughout the United States.

12.      MSA is an "employer" under NYLL § 651(6).

13.      MSA is an "employer" under 29 U.S.C. § 203(d).

14.      O'Neill is an "employer" under NYLL § 651(6).

3

15.     O'Neill is an "employer" under 29 U.S.C. § 203(d).

16.     Plaintiff is a current employee of Defendants and other members of the proposed

class and collective were or are "employees" of MSA under NYLL § 651(5).

17.     Plaintiff is a current employee of Defendants and other members of the proposed

collective were or are "employees" under 29 U.S.C. § 203(e).

18.     Plaintiff and proposed class and collective members are current and former

employees of MSA, all of whom are or were employed as Handlers of EDCs.

19.     Plaintiff and other Handlers work in the State of New York.  Plaintiff previously

served in the United States Marine Corps and proposed class and collective members include

retirees of the New York City Police Department, the NYC Corrections Department, former

NYS Court Officers, and former United States military personnel.

20.     According to MSA, "MSA's full-time team of EDC handlers carries both military

and law enforcement backgrounds.  Before they begin working with MSA dogs, they undergo

extensive training in Explosive Detection, Counter Surveillance and Behavior Pattern

Recognition.  They receive continuing education and training to successfully address the ever-

evolving threat of IEDs."   MSA, *America's Leader in Explosive Detection Canine Teams*,

http://www.msasecurity.net/msa-explosive-detection-canines-0 (last visited Aug. 29, 2017).

## COLLECTIVE ACTION ALLEGATIONS

21.     This action is brought as a collective action pursuant to 29 U.S.C. § 216(b).

22.     This action is brought on behalf of the Plaintiff and a collective of similarly

situated employees who worked for Defendants as EDC Handlers within the period of three

years before the filing of the Complaint.

23.     Plaintiff and potential Plaintiffs who elect to opt-in as part of the collective action

are all victims of the Defendants' common policy to violate the FLSA by (1) failing to pay

Handlers for hours worked training, bathing, brushing, exercising, feeding, grooming, cleaning of the canine's transport vehicle, and similar activities at home and on days off and maintaining MSA's canines; (2) failing to pay the prevailing wage and fringe benefits required under government contracts; (3) failing to pay all earned wages; and (4) failing to pay overtime wages, at the rate of one and one-half times the irregular rate of pay, for all time worked in excess of 40 hours in any given week pursuant to 29 U.S.C. § 207.

24.    The proposed collective is in excess of 250 EDC Handlers formerly and currently employed by Defendants (the "Collective").  The names of all potential Collective members are readily ascertainable as they are identified on Defendants' payroll records located within Defendants' custody and control.

25.    Plaintiff is similarly situated to all members of the Collective as Defendants uniformly maintain a single common policy to refuse to pay members of the Collective for all "off-duty" time spent training and caring for MSA's canines.  The questions of law and fact common to the proposed collective predominate over any questions affecting only Plaintiff Brown or individual members.  These questions of law and fact include, but are not limited to: (1) whether time spent training and caring for MSA's EDCs is compensable pursuant to the FLSA; (2) whether Defendant failed to pay Plaintiff and members of the proposed collective the wages required for the training and care of the Handler's canine; (3) whether Defendants failed to pay Plaintiff and members of the proposed collective the prevailing wage required under federal, state and New York City government contracts; (4) whether Defendants failed to pay Plaintiff and members of the proposed collective all earned wages; (5) and whether the Defendants required Plaintiff and members of the proposed collective to perform work on its behalf and for its benefit for which they were not compensated; and (6) whether the Defendants

failed to pay overtime wages, at the rate of one and one half times the regular rate of pay, for all hours worked in excess of 40 hours in any given week in violation of the FLSA.

26.     The claims of the Plaintiff are typical of the claims of the proposed collective. The Plaintiff and proposed collective members are all subject to Defendants' common policies and willful practices of failing to pay employees for all hours worked at the statutorily required overtime wage rates. Plaintiff and proposed collective members have thus all sustained monetary damages in a similar manner as a result of the Defendants' implementation of a single policy that violates the FLSA.

27.     Defendants uniformly apply the same employment policies, practices, and procedures to all EDC Handlers who work for Defendants at all locations within the State of New York.

28.     Plaintiff and their counsel will fairly and adequately protect the interests of the proposed collective.  Plaintiff has retained counsel with nearly forty years of experience in complex wage and hour collective and class action litigation, having served as Senior Trial Attorney for the United States Department of Labor prior to engaging in wage and hour litigation on behalf of private clients.

29.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.  The individual Plaintiff and proposed collective members increase efficiency by adjudicating common issues of law and fact in one proceeding rather than in a series of separate lawsuits against Defendants.  A collective action will also prevent repetitive and duplicative litigation with the increased expense and delay resulting from a series of individual lawsuits.

## RULE 23 CLASS ACTION ALLEGATIONS

30.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

31.     This action is brought on behalf of the Plaintiff and a class consisting of similarly situated employees who worked for Defendants within New York State as EDC Handlers.

32.     The proposed class is so numerous that joinder of all members is impracticable. The size of the proposed class is in excess of 250 Handlers.

33.     The class is readily ascertainable as the identities of all potential members of the proposed class are located on Defendants' payroll records, within the Defendants' custody and control.

34.     Defendants have an established common policy and widespread practice to require Handlers to work training and caring for their EDCs without pay.  Defendants acted and refused to act on grounds that apply uniformly to the class, so that final injunctive relief or corresponding declaratory relief is appropriate to the class as a whole.

35.     The questions of law and fact common to the proposed class predominate over any questions affecting only individual members.  These questions of law and fact include, but are not limited to: (1) whether training and caring for EDCs is compensable time pursuant to the NYLL; (2) whether Defendant failed to pay Plaintiff and members of the proposed class the wages required for the training and care of the Handler's canine; (3) whether Defendants failed to pay Plaintiff and members of the proposed class the prevailing wage required under federal, state, and New York City government contracts; (4) whether Defendants failed to pay Plaintiff and members of the proposed class all earned wages; (5) whether the Defendants required Plaintiff and members of the proposed class to perform work on their behalf and for their benefit for which they were not compensated; and (6) whether the Defendants failed to pay overtime

wages, at the rate of one and one half times the regular rate of pay, for all hours worked in excess of 40 hours in any given week in violation of New York state law.

36.     The claims of the Plaintiff are typical of the claims of the proposed class.  The Plaintiff and proposed class members were all subject to Defendants' common policies and willful practices of failing to pay Handlers for all hours actually worked, thus unlawfully withholding earned wages and overtime wages. Plaintiff and proposed class members have thus sustained lost wages and suffered similar injuries as a result of the Defendants' uniform policies and common actions.

37.     Defendants uniformly apply the same employment policies, practices, and procedures to all Handlers who work for Defendants at their various locations within New York State.

38.     Plaintiff and their counsel will fairly and adequately protect the interests of the proposed class.  Plaintiff has retained counsel experienced in complex wage and hour collective and class action litigation.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The individual Plaintiff and proposed class members increase efficiency by adjudicating common issues of law and fact in one proceeding rather than in a series of separate lawsuits against Defendants.  A class action will also prevent repetitive and duplicative litigation increased expense, and delay.

## **FACTUAL BACKGROUND**

40.     At all relevant times, Plaintiff and the proposed collective and class members were hourly employees compensated at average hourly rates of approximately $28 an hour from a period six years before the filing of the Complaint to the present (the "Class Period").

41.     At all relevant times, Defendants were obligated to pay the prevailing wage under the SCA and NYLL, Article 9, Section 230.

42.     At all relevant times, Plaintiff and proposed collective and class members were employees working under a written contract Defendants had with the federal, state and City governments, and subject to prevailing wage requirements under the SCA for government related security services, and the NYLL for New York State and City government related security services.

43.     At all relevant times, Defendants required Plaintiff to train and care for one of Defendants' EDC which lives in his home.   The Defendants' canine lives and works continuously with the Plaintiff, but remains the property of MSA.   At any time, the canine may be removed from the possession and care of Plaintiff and other Handlers by the Defendants for any reason or for no reason at all, at MSA's discretion.

44.     MSA advertises that it has "a highly-successful Explosive Detection Canine (EDC) program" that is "rooted in an unmatched training philosophy and truly unique-to-the-industry focus on the development of single-purpose, single-handler teams that are trained exclusively in explosive odor detection." MSA, *MSA Bomb Dogs Experience Best-in-Class Training*,    http://www.msasecurity.net/msa-explosive-detection-canine-training-facility    (last visited Aug. 29, 2017).   As part of this training, each EDC requires constant training that entails many hours of work each day.   This training requires that feeding be inherently incorporated into the sniffing out the scent of explosives.

45.     MSA further boasts that "[d]ogs are trained daily utilizing either food or play rewards depending on their individual interest and always using real, uncontaminated explosives." *Id.*

46.     As MSA describes it, "[u]nlike other providers, MSA bomb dogs are never kenneled or used by multiple handlers once put to work.  They live at home with their handler and receive daily training.  This improves their temperament and makes them far more effective at work."  MSA, *America's Leader in Explosive Detection Canine Teams*, http://www.msasecurity.net/msa-explosive-detection-canines (last visited Aug. 29, 2017).

47.     MSA also states that "[a]fter a hard day searching for explosives, it wouldn't be right to put an MSA canine in a cage.  That's why MSA doesn't kennel our dogs. When their workday is over, they go home with their family."  MSA also states "Another thing we don't do is break up their routine by assigning them multiple handlers.  We stick to our 'One Dog, One Handler' policy. This ensures optimum performance, and keeps our dogs happy, healthy, and effective." MSA, *Meet Our Bomb Dogs*, http://www.msasecurity.net/meet-our-bomb-dogs (last visited Aug. 29, 2017).

48.     Accordingly, Defendants require Plaintiff and all Handlers to hand-feed their assigned animals all of their meals throughout the animal's lives.  All meals the EDC received were part of a required training regimen.  In actual practice, trace amounts of explosives were hidden in training facility rooms, vehicles, or outdoors in a prescribed manner, and the canines were required to find those explosives.  The canines were rewarded for finding the explosives with food, which is fed to them - one handful per session - by their Handlers.

49.     The Defendants require the Handlers, as a matter of policy and required procedure, to train/feed their assigned canines in this manner, seven days a week, 365 days a year.  Each meal provided to the canine becomes a training session that lasts an average of ten hours per week.  These meal/training sessions must be provided during times when Plaintiff and other Handlers are not on the clock.

50.     Defendants require Plaintiff and Handlers to perform an average of one hour of uncompensated training and care each day of work, and two hours of uncompensated training and care each day Plaintiff and other Handlers are not on duty.  Therefore, contrary to New York and federal law, Defendants require Plaintiff and other Handlers to perform uncompensated work time.

51.     Defendants required not only that the proposed collective and class members perform the EDC training described above, but required Handlers to document and report the hours spent on such training.  Accordingly, the work described herein was performed with the knowledge and direction of the Defendants.  Plaintiff is generally on duty ten hours per day, four days per week.  The proposed collective and class members typically have work schedules of 8, 10, or 12-hour days, 3 to 4 days a week, excluding any additional overtime. Handlers may train/feed the canines at various times throughout the day, both when they are on-duty and when they are off-duty, but at least one meal is typically provided by the Handlers on any regular work day, when Handlers are off-duty and unpaid.

52.     This daily training that the Plaintiff and members of the proposed collective and class must provide each day is provided without compensation to collective and class members, yet is integral to MSA's business. Indeed, MSA espouses on its website that "[w]ith an uncompromised commitment to comprehensive best-in-class training of our canines and handlers, MSA delivers an unrivaled and nationally-certified Explosive Detection Canine (EDC) team that keeps millions of people safe across the globe." MSA, *America's Leader in Explosive Detection Canine Teams*, http://www.msasecurity.net/msa-explosive-detection-canines-0 (Last visited Aug. 29, 2017).

53.     Each week, Plaintiff and the members of the proposed collective and class were and remain unpaid for an average of ten hours per week.  (Four days worked per week, one hour

11

of feeding/training per on-duty day, three days off-duty per week, two hours of feeding/training and caring for the canine).

54.     When Plaintiff and the members of the proposed collective and class had time off on their regular schedules (typically, 3-4 days a week), they were still required to train/feed their animals in the manner established by Defendants' corporate procedure and policy. In other words, they were required to train/feed their assigned EDC on days they otherwise were not on duty.  At all relevant times, Plaintiff and members of the proposed collective and class were not compensated for this work.  Thus, each week, when they were otherwise not scheduled to work, Plaintiff and the members of the proposed collective and class were unpaid for an average of ten hours per week.

55.     All Handlers had the same duties to train and care for their EDCs.  This required regimen did not change if any of the Plaintiff or proposed collective and class members worked part-time, such as one or two days a week.  In such event, the amount of unpaid work conducted by the Handler increased.

56.     Defendants were required to pay Plaintiff and members of the proposed collective and class for the time they spent feeding, grooming, caring for and training Defendants' canines that Defendants assigned to Handlers.  Defendants were also required to pay for tasks associated with the care of the canines, such as taking the canines to the veterinarian.  Defendants failed to do so, in violation of state and federal law.

57.     Defendants were required to pay Plaintiff for the travel time that was required for them to drive to and from one work assignment to another, and time during the travel time associated with grooming, caring for and training of the canines, and transporting the canines as required by Defendants' business.

58.     Plaintiff and members of the proposed class and collective were indiscriminately paid at disparate rates for lunch hours and breaks.  For some assignments, they were not paid for lunch hours, and not paid for breaks, regardless of the length of the shift.

59.     Approximately two times a year, Plaintiff and members of the proposed class and collective were required to attend training and certification classes with their animals which each lasted approximately four hours.   Such classes were typically conducted in Windsor, Connecticut. Plaintiff and other Handlers travelled with their EDC as much as five hours per day to and from said classes, and were not paid for this travel time. To the extent this time worked constituted overtime under state or federal law, Plaintiff and members of the collective and class were not paid earned wages. 29 CFR § 785.37.

60.     At all relevant times, prior to any EDC being "retired" at the age of approximately nine years, the veterinary care of such canines was provided by veterinarians retained by the Defendants at various locations throughout the Tri-State area or local veterinarians.  Plaintiff and members of the proposed collective and class were not paid for the travel time associated with bringing their assigned EDC to these veterinarians. To the extent this additional time work constituted overtime under state or federal law, Plaintiff and members of the collective and class were not paid earned wages.

61.     As described, the EDC were exclusively trained by their Handlers, who were with their animals continuously, living with them and working with them. By virtue of this continuous physical proximity, and the unique activities shared between the Handlers and their animals, an unparalleled psychological and emotional bond was created between the Handlers and their assigned canines.

62.     At all relevant times, Defendants claimed and asserted ownership, dominance and control over the animals cared for and maintained by the Handlers. MSA could, and did remove canines from the physical possession of handlers for any reason or no reason.

63.     Defendant promotes its Explosive Detection Canine services as an Explosive Detection Canine Team, emphasizing the individual pairing of Handler and animal under Defendants' "One Dog, One Handler" policy and performance benefits of the pairings. MSA, *Meet Our Bomb Dogs*, http://www.msasecurity.net/meet-our-bomb-dogs (Last visited Aug. 29, 2017).

64.     Throughout the Class Period, when the EDC reached the age of nine or ten, they were "retired" because Defendants deemed them too old to perform their required functions. At such time the animals stayed, by design of the Defendants, in the full-time care and custody of their Handlers. Handlers continued to feed, board, attend to, and provide for the medical care of their animals at their own personal expense for the remainder of the animals' lives. Handlers were then assigned younger canines which, like their predecessors, stayed in the full-time care and custody of Handlers.

65.     Thus, Defendants, by their numerous officers and directors, with intent and actual malice, by design, in premeditated fashion, and in conspiracy with each other, exploited the bond between Handlers and their assigned canines, creating a financial windfall for Defendants. MSA avoided the obligation to financially support animals no longer useful to them, and shifted this expense to the Handlers, who cared for canines they did not own because of the love they had for their animal-partners and the unique psychological and emotional ties they had with them.

66.     Defendants represented to Plaintiff in writing that all veterinary costs of the bomb-sniffing canines would be covered by MSA. In fact, during the Class Period, MSA covered the veterinary costs of the canines only until they retired, at which time the Plaintiff and

other Handlers paid for the full veterinary costs of their assigned canines for the remainder of the animals' life

67.     During the course of their employment, Plaintiff and other Handlers incurred significant expense from housing and maintaining the canines. For a portion of the Class Period, Plaintiff was required to log and document these expenses, which routinely exceeded $400 a month. Despite the level of expense, and the documentation that Plaintiff submitted to MSA, Plaintiff was only reimbursed $400 and had to bear all of the additional expenses on his own. Defendants represented in writing that the $400 stipend would cover the costs of maintaining the canines.

<u>**COUNT ONE**</u>
<u>**FLSA OVERTIME VIOLATIONS**</u>

68.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 67 as if set forth in full herein.

69.     Pursuant to 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce… for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

70.     As described above, Plaintiff and proposed collective and class members routinely and continuously worked more than forty hours a week while working for Defendants.

71.     Defendants violated the FLSA by failing to pay Plaintiff and other members of the proposed collective overtime wages at a rate of one and one-half times the normal rate of pay for all hours worked over 40 in any given week.

72.     For more than twenty years, the law in this circuit has been clear that with respect to service animals such as these, that "walking, feeding, training, grooming and cleaning up are

integral and indispensable parts of the handler's principal activities and are compensable as work." *Reich v. New York City Transit Auth.*, 45 F.3d 646, 651 (2nd Cir. 1995). In the case of Plaintiff and the other proposed class and collective action members, they were not only required to walk, feed, groom, train and clean up after the canines, they were required to perform Defendants' explosive detection training program.  The failure of Defendants to pay Plaintiff and other members of the proposed class and collective action wages and overtime due them was willful, intentional and deliberate.

73.     Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiff and the other similarly situated Handlers for all of their unpaid overtime, an additional equal amount as liquidated damages, attorneys' fees and costs.

74.     By the foregoing reasons, Defendants are liable to Plaintiff and members of the proposed collective and class in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees, and costs.

## COUNT TWO
## NYLL AND NYCRR OVERTIME VIOLATIONS

75.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 74 hereof.

76.     12 NYCRR § 142-2.2 requires that employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate.

77.     NYLL § 663 provides that any employee paid by his employer less than the wage to which he is entitled under its provisions may recover in a civil action the amount of any such underpayments, together with costs and reasonable attorneys' fees.

78.     As described above, Plaintiff and proposed class members routinely and continuously worked for less than the prevailing wage while working for Defendants.

79.     Plaintiff and proposed class members routinely and continuously worked more than forty hours a week while working for Defendants.

80.     Plaintiff and proposed class members did not receive overtime compensation for all hours worked in excess of forty hours in any given week.

81.     Plaintiff and proposed class members did not receive overtime compensation for all hours worked in excess of 10 hours in any given week.

82.     Consequently, by failing to pay to Plaintiff and other members of the proposed class the prevailing wage or overtime compensation, Defendants violated NYLL § 231, 12 NYCRR § 142-2.2 and NYLL § 663.

83.     Defendants' failure to pay overtime compensation to the Plaintiff and members of the proposed class was willful.

84.     By the foregoing reasons, Defendants have violated NYLL § 231, 12 NYCRR § 142-22 and NYLL § 663 and are liable to Plaintiff and members of the proposed class in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## COUNT THREE
## FLSA/SCA PREVAILING WAGE VIOLATIONS

85.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 84 hereof.

86.     Pursuant to 41 U.S.C. § 6701 et seq, "any contract… that is made by the Federal Government or the District of Columbia, involves an amount exceeding $2,500, and has as its principal purpose the furnishing of services in the United States through the use of service employees… shall contain a provision specifying the minimum wage to be paid to each class of service employee… as determined by the Secretary… in accordance with prevailing rates in the locality..."

17

87.     As described above, Plaintiff and members of the collective and class were paid approximately $28 per hour including for contracted Explosive Detection Canine services at Federal Government buildings, properties and facilities.

88.     The General Services Agency prevailing rate for Explosive Detection Canine services during the Class Period exceeded $28 an hour.

89.     Defendants failed to pay the prevailing hourly wage rate or fringe benefits required by Defendants' contracts with Federal, State and city governments.

90.     Defendants violated the FLSA by failing to pay Plaintiff and other members of the proposed class and collective the prevailing rate as required by the SCA.

91.     Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiff and the other members of the proposed and collective and class all of their unpaid prevailing wages, an additional equal amount as liquidated damages, attorneys' fees and costs.

92.     By the foregoing reasons, Defendants are liable to Plaintiff and members of the proposed collective and class in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees, and costs.

## COUNT FOUR
## NYLL PREVAILING WAGE VIOLATIONS

93.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 92 hereof.

94.     NYLL § 231 provides that "[e]very contractor shall pay a service employee under a contract for building service work a wage of not less than the prevailing wage in the locality for the craft, trade or occupation of the service employee."

95.     Defendants failed to pay the prevailing hourly wage rate or fringe benefits required by Defendants' contracts with Federal, State and city governments.

96.     As described above, Plaintiff and proposed class members, as third-party beneficiaries of Defendant's contracts with government agencies to pay wages as required by NYLL § 230 et seq. and NYC Admin. Code § 6-130, are entitled to relief for breach of this contractual obligation, plus interest.

97.     Upon information and belief, Defendants' failure to pay the required prevailing hourly wage rate or fringe benefits to the Plaintiff and members of the proposed class to which they were entitled was willful.

98.     Upon information and belief, at all times relevant to this complaint Defendants were required to certify and did certify that they paid Plaintiff and members of the proposed class wages as required by NYLL § 230 et seq. and NYC Admin. Code § 6-130.

99.     By the foregoing reasons, Defendants have violated NYLL § 230 et seq. and NYC Admin. Code § 6-130 and are liable to Plaintiff and members of the proposed class as third-party beneficiaries in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## COUNT FIVE
## NYLL FAILURE TO PAY WAGES AND WAGE SUPPLEMENTS

100.    Plaintiff repeats and re-allege the allegations set forth in paragraphs 1 through 99 hereof.

101.    Pursuant to New York law, workers such as Plaintiff and other members of the proposed class are protected from wage underpayments and improper employment practices.

102.    Pursuant to NYLL § 190, the term "employee" means "any person employed for hire by an employer in any employment."

103.    As persons employed for hire by Defendants, Plaintiff and other members of the proposed class are "employees," pursuant to NYLL § 190.

104.     Pursuant to NYLL § 190, the term "employer" includes "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

105.     As Defendants hired the Plaintiff and other members of the proposed class, Defendants are "employers."

106.     Pursuant to NYLL § 191, Plaintiff and other members of the proposed class are entitled to be paid "not later than seven calendar days after the end of the week in which the wages are earned."

107.     By failing to pay Plaintiff for hours worked on Defendants' behalf, including the training of the canines, travel, and training time, Defendants have failed to pay their proper wages.

108.     The unreimbursed expenses incurred by the Plaintiff and the other members of the proposed collective action and class action constitute wage supplements within the meaning of NYLL § 198-c(2) ("the term "benefits or wage supplements" includes, but is not limited to, reimbursement for expenses") and pursuant to NYLL § 198-c(1) were required to be paid within thirty days after they were incurred.

109.     Upon information and belief, Defendants' failure to pay Plaintiff and members of the proposed class wages, wage supplements, and overtime was willful and deliberate.

110.     By the foregoing reasons, Defendants have violated NYLL §§ 191 and 198 and pursuant thereto are liable to Plaintiff and other members of the proposed class the full amount by which such Plaintiff and class members were underpaid, prejudgment interest at the rate of nine percent, and all reasonable attorneys' fees.

## COUNT SIX
## NYLL 195(3) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

111.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through hereof 110.

112.   Pursuant to NYLL § 195(3), Defendants were required to provide the plaintiff and proposed collective and class members a wage statement which, among other things, was required to include "the number of regular hours worked, and the number of overtime hours worked."

113.   Plaintiff and the proposed collective and class members were not provided an accurate wage statement NYLL § 195(3) because the wage statements that Plaintiff and the proposed collective and class members received did not account for all the hours that they worked and did not account for all their overtime.

114.   Pursuant to NYLL § 198(1-d), the Plaintiff and proposed collective class members are entitled to collect civil damages of $250 for each work day that such violation occurred not to exceed $5,000 per Plaintiff and proposed collective and class member together with costs and reasonable attorneys' fees.

## COUNT SEVEN
## NYLL 198(1-A) LIQUIDATED DAMAGE

115.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 114 hereof.

116.   Pursuant to NYLL § 198(1-a), unless defendants prove a good faith basis to believe that the underpayment was in compliance with law (which they cannot), Plaintiff and the class members are further entitled to an additional amount as liquidated damages equal to 100 percent of the total amount of the wages found to be due.

117.    Defendants failure to pay wages and overtime for home training of canine is not only in bad faith, but Defendants have been marketing the "daily training" provided by Plaintiff collective and class members, but not compensating the members for the training that is central to Defendants' marketing and business.

**WHEREFORE**, Plaintiff, individually and on behalf of all other persons similarly situated who were employed by Defendants, demand judgment:

1)    Awarding them their unpaid wages, overtime, liquidated damages as set forth in federal and state law, pre and post judgment interest, damages as set forth in NYLL § 198-a(1-a) and (1-d)

2)    Awarding them costs and attorneys' fees in collecting such judgment, as provided in FLSA § 216 and NYLL § 198(4) and a provision pursuant to NYLL § 198(4) that any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

3)     For an award of injunctive relief against the Defendants as this Court deems appropriate to prevent future violations of New York Labor Law and the Federal Labor Service Act.

4)     Together with such other and further relief as to the Court seems just and proper, including costs, disbursements, and attorneys' fees incurred by Plaintiff herein.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: New York, New York
           September 21, 2017

Douglas Weiner (DW1965)
Darren Shield (DS1337)
Mazzeo Song, P.C.
444 Madison Avenue, Fourth Floor
New York, NY 10022
Phone (212) 599-0700
dweiner@mazzeosong.com
dshield@mazzeosong.com